IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BILLINGS DIVISION

| | |
|---|---|
| BASIC ENERGY SERVICES, LP, ) | Cause No. CV-09-31-BLG-RFC |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | ORDER GRANTING IN PART |
| ) | VAN HOOK'S MOTION TO |
| DOUGLAS PIERCE, CLAUDIA ) | DISMISS SECOND AMENDED |
| PIERCE, BARRY VAN HOOK ) | COMPLAINT |
| and RICHARD WOLLA, ) | |
| ) | |
| Defendants. ) | |
| ) | |

**I.   INTRODUCTION**

Plaintiff Basic Energy Services, LP brings this action against its former Area Manager Douglas Pierce and his alleged coconspirators in a false invoicing embezzlement scheme. Named as Co-Defendants are Richard Wolla, Basic's former Regional Vice President, Barry Van Hook, the owner of a water well drilling and trucking business, and Pierce's wife Claudia. Basic alleges Pierce and Wolla would submit false invoices to Basic for goods and services purportedly provided to Basic by conspiring vendors. Pierce and Wolla would then convert

1

the cash, goods and services for their own use.  In exchange for their participation, Pierce and Wolla would provide the other Defendants with cash and goods.

Defendant Barry Van Hook is the only Defendant at issue here.  The Court previously dismissed Basic's (First) Amended Complaint against Barry Van Hook for failure to plead plausible causes of action (doc. 50), but Basic was granted leave to amend.  Basic has now filed a Second Amended Complaint alleging the same causes of action with some additional factual allegations.  Doc. 51.  Basic alleges six causes of action against Van Hook: Count Five, Conversion; Count Six, Civil Conspiracy; Count Seven, Punitive Damages; Count Nine, Civil RICO under § 1962(c); Count Ten, Civil RICO Conspiracy under § 1962(d); and Count Eleven, Negligence.  Pending before the Court is Van Hook's Rule 12(b)(6) motion to dismiss all counts.  Doc. 52.  For the following reasons, Van Hook's motion must be denied except as to the RICO claim alleged in Count Nine.

## II.  ANALYSIS

### A.  RULE 12(B)(6) STANDARD OF REVIEW

A claim is subject to dismissal under Rule 12(b)(6) Fed.R.Civ.P. if it lacks a cognizable legal theory or sufficient facts alleged under a cognizable legal theory. *Johnson v. Riverside Healthcare System, LP,* 534 F.3d 1116, 1122 (9th Cir. 2008). With regard to the latter, a claim must "contain sufficient factual matter, accepted

as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) *quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A facially plausible claim "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Plausible does not mean probable, but there must be more than a "sheer possibility" of unlawful action on the part of defendant. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief." *Id.* (internal quotations omitted).

In considering a Rule 12(b)(6) motion, courts must accept as true a complaint's well-pleaded allegations of material fact and construe them in the light most favorable to the non-moving party. *Daniels-Hall v. National Educ. Ass'n,* 629 F.3d 992, 998 (9th Cir. 2010).  Courts are not, however, required to accept as true pleadings that are no more than legal conclusions unsupported by factual allegations. *Iqbal,* 556 U.S. at 679.

The civil conspiracy and RICO claims are subject to Rule 9(b) Fed.R.Civ.P.'s heightened pleading standard, *Ares Funding, L.L.C. v. MA*

3

*Maricopa, L.L.C.,* 602 F.Supp.2d 1144, 1150 (D. Ariz. 2009) (civil conspiracy alleging fraud), *Odom v. Microsoft Corp.,* 486 F.3d 541, 553 (9th Cir 2007) (RICO claims alleging fraud), although the claim for conversion is not, *Burnett v. Rowzee,* 2007 WL 2735682, * 11 (C.D. Cal. 2007), nor is the negligence claim. Although Rule 9(b) does not require the pleading of detailed evidence, Basic must allege the time, place, and manner of each predicate act, the nature of the scheme involved, and the role of each defendant in the scheme. *Hill v. Opus Corp.,* 841 F.Supp.2d 1070, 1088-89 (C.D. Cal. 2011), *citing Lancaster Community Hospital v. Antelope Valley Hospital District*, 940 F.2d 397, 405 (9th Cir.1991). "A pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer to the allegations. While statements of the time, place and nature of the alleged fraudulent activities are sufficient, mere conclusory allegations of fraud are insufficient." *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir.1989).

    **B.**    **THE SECOND AMENDED COMPLAINT ADDRESSES THE REASONS FOR DISMISSAL OF THE (FIRST) AMENDED COMPLAINT**

The Court dismissed Basic's (First) Amended Complaint against Van Hook because it failed to allege any specific acts taken by him, let along the time, place, or manner of any such act. Doc. 50, p. 4. The only actual factual allegations

relating to Van Hook in the (First) Amended Complaint were that he lived in Richland County, Montana and owned and operated Exploration Drilling, Inc. *Id., citing* doc. 25, ¶ 3(d), 70.  Other than that, with respect to Van Hook, the (First) Amended Complaint merely parroted the elements of the causes of action. *Id.*

But even though Basic makes some of its new allegations based on information and belief, the Second Amended Complaint is sufficiently detailed to address the reasons for dismissal of the (First) Amended Complaint.  For example, Basic now alleges that from approximately Fall 2005 to December 2008, Van Hook sold $18,520.00 in truck parts Pierce purchased from Motor Power Equipment, allegedly for Basic, but which Basic never received.  Doc. 51, ¶ 9(c).  The Second Amended Complaint also added a subsection detailing Van Hook's actions:

- Van Hook is the owner of Exploration Drilling, a company involved in drilling water wells and trucking.  He participated with Pierce in an informal bartering system where, based on Basic's information and belief, Pierce had Basic pay for diesel fuel, motor and hydraulic oil, parts, and water from Basic's wells and had them delivered to Van Hook. *Id.,* at ¶ 10.

- Examples of goods and services that were authorized by Pierce, paid for by Basic, and delivered to Van Hook include:

    - 18 invoices, dating from November 2006 to April 2008, totaling approximately $64,692, for bulk diesel fuel from Cross Petroleum delivered to Van Hook's business Exploratory Drilling.

5

- • Oil delivered from Cross Petroleum totaling $18,629.

- • $3,871 in parts from Beal Trailers.

- • Other questionable invoices for three deliveries totaling $9,770.

• Basic alleges Van Hook accepted over $100,000 in deliveries of goods from Pierce during the false invoice scheme.

• Van Hook then sold these goods for his own gain, used them in his business, or stored them for Pierce. *Id.*, at ¶ 11.

• Basic alleges upon information and belief that Van Hook compensated Pierce for the goods and services by quitclaiming real property in Sidney, Montana to Pierce. *Id.* at ¶ 15.

When combined with the allegations tracking the elements of the causes of action in the individual Counts of the Second Amended Complaint, Basic has pleaded sufficient factual content that allows the court to draw the reasonable inference that Van Hook was involved in the false invoicing scheme. *See Iqbal,* 556 U.S. at 679.

Van Hook nonetheless argues that the Court should not consider the allegations made "upon information and belief" because such allegations do not usually satisfy the particularity requirements of Rule 9(b), citing *Moore,* 885 F.2d at 540. But there are only three allegations made on information and belief: that truck parts paid for by Basic were sold by Van Hook, ¶ 9(c); that Van Hook sold

6

the goods for personal gain, used them for his business, or stored them for Pierce to cover up the scheme, ¶ 11; and that Van Hook quitclaimed property to Pierce in payment, ¶ 14.

Moreover, as *Moore* and more recent cases recognize, allegations of fraud may be made on information and belief where the precise details are only known to the defendant and the allegations are supported by a statement of facts on which the belief is founded. *Id.; Shroyer v. New Cingular Wireless Services, Inc.,* 622 F.3d 1035, 1042. (9th Cir. 2010). Like in *Shroyer,* Basic's allegations concerning the false invoicing scheme concern a definite time frame. And more importantly, the allegations are allegedly supported by invoices showing delivery of goods and services to Van Hook and his business, as well as a quitclaim deed. 622 F.3d at 1042. These allegations are sufficiently particular to allow Van Hook to prepare an answer. Finally, the Rule 12(b)(6) standard permits the Court to draw on its common sense, *Iqbal,* 556 U.S. at 679, and, considering the well-pleaded facts as true, the scheme alleged by Basic is plausible.

But that only addresses the Court's reasons for dismissing the (First) Amended Complaint against Van Hook. Van Hook argues there are other deficiencies in the individual causes of action.

## C. THE RICO CLAIMS

Basic charges Van Hook with two civil RICO claims: Count 9, alleging a violation of 18 U.S.C. § 1962(c) for Van Hook's participation in the association-in-fact's (composed of Pierce, Wolla, and Van Hook) false invoicing scheme; and Count 10, alleging a RICO conspiracy in violation of 18 U.S.C. § 1962(d) for conspiring to conduct the racketeering activity described in Counts 8 and 9.

A cause of action under § 1962(c) is composed of four elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 497 (1985). "Racketeering activity" is defined by 18 U.S.C. § 1961(1) as any of numerous crimes, including mail and wire fraud and interstate transportation of stolen property, which Basic alleges constitute the racketeering activity in this case. ¶¶ 54-56. A "pattern of racketeering activity" means two or more acts of racketeering activity within 10 years of each other together with a showing of a relationship between the acts and of the threat of continuing activity. *Howard v. America Online Inc.*, 208 F.3d 741, 746 (9th Cir. 2000); 18 U.S.C. § 1961(5). Title 18 U.S.C. § 1964(c), which grants private plaintiffs a civil action for violations of § 1962, requires proof that Van Hook's conduct was not only the "but for" cause, but also the proximate cause of

its injury.  *Oki Semiconductor Co. v. Wells Fargo Bank, Nat. Ass'n*, 298 F.3d 768, 773 (9th Cir. 2002).

To plead a RICO conspiracy under § 1962(d), Basic must allege either an agreement that is a substantive violation of RICO or that the defendants agreed to commit, or participated in, a violation of two predicate offenses.  *Howard,* 208 F.3d at 751.  There can be no RICO conspiracy without a valid underlying substantive RICO claim.  *Id.*

Van Hook first argues the RICO claims fail because Basic has not alleged that Van Hook "operated or managed" the association's affairs.  The "operate or manage" test flows from § 1962(c)'s language rendering it unlawful for persons associated with an enterprise affecting interstate commerce to "conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."  *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993).  Regardless, there is no authority requiring Basic to expressly plead operation or management and Basic has alleged that Van Hook "participated, on an individual basis, in the conduct of the association through the patter of racketeering activity …" ¶ 67.

More importantly, the Supreme Court has held that the inclusion of the word "participate," in addition to "conduct," "makes clear that RICO liability is

9

not limited to those with primary responsibility for the enterprise's affairs, just as the phrase 'directly or indirectly' makes clear that RICO liability is not limited to those with a formal position in the enterprise, but some part in directing the enterprise's affairs is required." *Reves,* 507 U.S. 170 at 179.  To be liable under § 1962(c), one must participate in the operation or management of the enterprise itself, not just their own affairs, but this does not limit liability to "upper management" because an enterprise is also "operated" by lower rung participants in the enterprise who are under the direction of upper management.  *Id.* at 184-85.

The Second Amended Complaint alleges that Van Hook participated in the association by receiving and disposing of property stolen from Basic.  ¶¶ 65-67.  Combined with the specific allegations relating to Van Hook in paragraphs 10-14, Basic has plausibly alleged that Van Hook conducted or participated, directly or indirectly, in the associations affairs.

Van Hook also argues the RICO claims must be dismissed because Basic has failed to allege its damages were proximately caused by his actions.  The proximate cause of an injury is a substantial factor in the sequence of responsible causation; it requires some direct relationship between the injury asserted and the injurious conduct.  *Oki Semiconductor Co.,* 298 F.3d at 773; *see also Gonzales v. Lloyds TSB Bank, PLC,* 532 F.Supp.2d 1200, 1213-14 (C.D.Cal. 2006).  But Basic

10

has alleged Van Hook received and disposed of property stolen from Basic and that the association's racketeering activity deprived Basic of over $500,000.  ¶¶ 65-68.  As such, Basic has alleged that Van Hook's actions were both a direct and proximate cause of its loss.  Although Van Hook's actions would not be a proximate cause of any losses incurred, for example, by a customer of Basic that Basic could not serve because of losses caused by the false invoices scheme, *see e.g. Holmes v. Sec. Investor Prot. Corp.,* 503 U.S. 258, 270-74 (1993), there is a direct relationship between Van Hook's alleged actions and Basic's loss.

Finally, Van Hook argues the RICO claims must be dismissed because Basic does not allege that he personally took part in any of the RICO predicate acts, the "pattern of racketeering activity," which in this case is mail or wire fraud and interstate transportation of stolen property.  ¶¶ 54 - 56.  Van Hook is correct that the Second Amended complaint does not allege he personally committed any predicate acts.  Accordingly, Count Nine, alleging a violation of § 1962(c) claim, must be dismissed as it relates to Van Hook.  *Blake v. Dierdorf,* 856 F.2d 1365, 1370-71 (9th Cir. 1988) (dismissing RICO claim against a particular defendant for lack of a pattern of racketeering activity where complaint alleged only one possible predicate act against him); *see also Lakonia Mgmt. v. Meriwether*, 106 F.Supp.2d 540, 550 (S.D.N.Y.2000) ("To plead a 'pattern of racketeering activity',

11

plaintiff must establish that each defendant committed at least two acts of racketeering–or two 'predicate acts'–within a ten-year period.") *contra Casperone v. Landmark Oil & Gas Corp*, 819 F.2d 112, 115 (5th Cir. 1987) (so long as there is sufficient evidence to connect him to the fraudulent scheme, a defendant need not personally commit the predicate acts to be liable under § 1962(c)).

But the RICO conspiracy claim remains because Van Hook need not have personally committed two or more predicate acts to be liable for a § 1962(d) RICO conspiracy. *Salinas v. United States,* 522 U.S. 52, 61-66 (1997) (applying §§ 1962(c) & (d) in criminal RICO case). "Section 1962(d) makes it unlawful to conspire to conduct or participate in the conduct of an enterprise's affairs, where its affairs are conducted through a pattern of racketeering activity." *Marceau v. International Broth. of Elec. Workers*, 618 F.Supp.2d 1127, 1144 (D.Ariz. 2009) *quoting United States v. Tille*, 729 F.2d 615, 619 (9th Cir.1984). To plead a § 1962(d) conspiracy to violate § 1962(c), Basic can either allege that Van Hook agreed with other to conduct the affairs of the enterprise through a pattern of racketeering activity or that he participated or agreed to participate in two predicate offenses. *Id.*; *Howard*, 208 F.3d at 751. Here, basic has alleged the former, that Van Hook agreed to conduct the affairs of the enterprise through a pattern of racketeering activity. The agreement need not be express if its existence

12

can be inferred from the words, actions, or interdependence of activities and persons involved. *Id., citing Oki Semiconductor Co.,* 298 F.3d at 775 and *Tille,* 729 F.2d at 619.

The Second Amended Complaint sufficiently alleges Van Hook agreed with Pierce and Wolla to perpetuate the RICO schemes alleged in Counts 8 and 9. ¶¶ 74-75. Accordingly, while the substantive RICO claim alleged in Count 9 must be dismissed against Van Hook, Basic may proceed against him with the RICO Conspiracy alleged in Count 10.

### D.  CONVERSION

To plead a plausible conversion claim, Basic must allege ownership of property, a right of possession, unauthorized dominion over that property by Van Hook, and damages that result. *Eatinger v. Johnson*, 887 P.2d 231, 234 (Mont. 1994). Although the Second Amended Complaint does not exactly track these elements, it plainly alleges that Van Hook is unlawfully possessing property owned by Basic. Considering that conversion need not be pleaded with particularity, *Burnett*, 2007 WL 2735682, * 11, Basic has pleaded a plausible conversion claim.

Van Hook nonetheless argues that Basic has failed to show how he can be liable for conversion when the facts merely allege that he purchased goods from a

13

thieving employee. But Van Hook does not fully understand the tort of conversion. Common law conversion is unlike the crime of theft in that it does not require specific intent to deprive the owner of the property. *Itin v. Ungar*, 17 P.3d 129, 135 n. 10 (Colo. 2000). This means that while a good faith purchaser who doesn't know the property is stolen cannot be criminally liable for theft, he may still be liable in tort for conversion. *Id.*

### E. CIVIL CONSPIRACY

A civil conspiracy claim is composed of five elements: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof. *Duffy v. Butte Teachers' Union No. 332,* 541 P.2d 1199, 1202 (Mont. 1975). *Duffy*, 541 P.2d at 1202. The Second Amended Complaint plausibly alleges that Van Hook conspired with the Pierces and Wolla to steal from Basic through the false invoicing scheme.

Van Hook makes the same arguments against the civil conspiracy claims that he made against the RICO claims: that Basic failed to plead that he took any overt acts in furtherance of the conspiracy and that his actions proximately caused Basic's loss. Again, there is a direct relationship between Van Hook's receipt of

goods and services purchased by Pierce with Basic's money and Basic's injury. Proximate cause is therefore satisfied.

Moreover, Basic has alleged that Van Hook accepted goods and services paid for by Basic and, in turn, paid Pierce for those goods and services with cash and real estate. ¶ 47. And even if the actions attributed to Van Hook are not in themselves torts, they do not have to be, as noted by *Duffy*:

> Prosser, Law of Torts, 4th Ed., p. 293, notes that it is not really the conspiracy which gives rise to a right of action, but the torts which may be committed in furtherance thereof. Each of these actions would support a claim for relief itself-*the only function served by the action of conspiracy being to connect nonacting but participating members who would not otherwise be liable to the one damaged*.
>
> The gist of the action is not the conspiracy charged, but the tort working damage to the plaintiff. It is only where means are employed, or purposes are accomplished, which are themselves tortious, that the conspirators who have not acted but have promoted the act will be held liable.
>
> To sustain their action here, then, plaintiffs must allege a tort committed by one of the alleged conspirators.

541 P.2d at 1242 (emphasis added, internal quotations omitted). Basic has alleged several torts committed by various co-conspirators and the tort of conversion against Van Hook.

### F.   NEGLIGENCE

Van Hook seeks dismissal of the negligence claim on the grounds that he owned no duty to Basic. According to Van Hook, the issue is his lack of a duty to protect Basic from the actions of Pierce, a third-party, citing *e.g. LaTray v. City of Havre,* 999 P.2d 1010, 1015 (Mont. 2000)(there is no duty to protect others against harm from third persons absent a special relationship of custody or control). But Basic does not allege that Van Hook is negligent for failing to protect Basic from Pierce. Basic alleges Van Hook is liable for his own actions–for breaching the duty of reasonable care owed to all persons by assisting Pierce and Wolla in concealing the false invoices scheme and disposing of property stolen from Basic. ¶¶ 82-85.

The existence of a legal duty is a question of law to be determined by the court, *Massee v. Thompson,* 90 P.3d 394, 400 (Mont. 2004), and it is appropriately raised on a Rule 12(b)(6) motion to dismiss. *Renteria v. United States,* 452 F.Supp.2d 910, 919 (D.Ariz. 2006). Basic notes that Montana law imposes a general duty of care on every person to "abstain from injuring the person or property of another or infringing upon any of another person's rights." Mont. Code Ann. § 28-2-201. Moreover, to the extent Van Hook's actions are deemed intentional rather than merely negligent, the general negligence statute imposes

16

liability for willful as well as negligent acts. Mont. Code Ann. 27-1-701. Finally, the issue in determining whether a defendant owes a plaintiff a legal duty is whether it was foreseeable, as a matter of law, that the defendant's acts or omissions would pose a risk of injury to the plaintiff. *Gaudreau v. Clinton Irrigation Dist.*, 30 P.3d 1070, 1074 (Mont. 2001). It is obviously foreseeable that participating in a fraud scheme and disposing of stolen property would injure the rightful owner of the property.

Accordingly, Basic's claim is not subject to dismissal for lack of a legal duty. And since the remainder of the allegations are sufficient to plead a plausible negligence claim, Count Eleven survives.

### G. PUNITIVE DAMAGES

Van Hook's only argument for dismissal of the punitive damages claim is that all of Basic's substantive tort claims must be dismissed. Since that is not the case, Count Seven, seeking punitive damages, also survives.

### III. ORDER

For those reasons, **IT IS HEREBY ORDERED** that Van Hook's Motion to Dismiss Second Amended Complaint (doc. 52) is **GRANTED IN PART**: Count Nine, alleging a civil violation of 18 U.S.C. 1962(c), is **DISMISSED** as against

Defendant Barry Van Hook only.  Van Hook's Motion to Dismiss is **DENIED** in all other respects.

**IT IS FURTHER ORDERED** that Basic's Unopposed Motion for a Scheduling Conference (doc. 59) is **GRANTED:** counsel for all parties shall convene in Chambers for a scheduling conference on **Wednesday April 17, 2013 at 10:00 a.m.**  Counsel who wish to participate by telephone conference should notify the Court as soon as practicable.

Dated this 4th of April, 2013.

>  /s/ Richard F. Cebull_____
>  Richard F. Cebull
>  Senior United States District Judge